**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

v.                                                    Case No. 8:23-cr-70-TPB-MRM

FLOYD HINTTEON GREEN, JR.,

     Defendant.
_____/

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
### AND REQUEST FOR EVIDENTIARY HEARING

This matter is before the Court on Defendant's "Motion to Suppress," filed by

counsel on May 1, 2023. (Doc. 19).  On May 30, 2023, the United States of America

filed a response in opposition to the motion.  (Doc. 25).  On June 14, 2023,

Defendant filed a reply.  (Doc. 28).  Because the facts are not contested, no hearing

is required.  As a result, Defendant's request for an evidentiary hearing (Doc. 20) is

denied.  After reviewing the motion, response, reply, court file, and the record, the

Court finds as follows:

### Background

The facts are undisputed and are captured almost entirely on police-worn

body camera.[1]  On December 28, 2022, law enforcement officers from the Winter

Haven Police Department initiated a traffic stop based on the suspicion that the

windows of Defendant Floyd Hintteon Green's truck were tinted too darkly.  Officer

_____

[1] At the Court's request, the Government provided a copy of the body camera footage for
review.  (Doc. 34).

Joey Ragusa informed Defendant of the reason for the stop and requested Defendant's license and registration.

Using a tint meter, Officer Ragusa confirmed the tint was too dark.  After asking Defendant some questions about the state of his license, Officer Ragusa asked Defendant to remain in the vehicle.  Before walking away, Officer Ragusa asked, "Is there anything in the truck we need to be concerned about? Guns, knives, grenades?  Any illegal narcotics?  Anything like that?"  Defendant responded negatively.  Officer Ragusa then asked for consent to search, which Defendant granted.  As indicated on the body-camera recording, this questioning extended the duration of the stop by approximately eight seconds.  Officer Ragusa returned to his patrol car with Defendant's license.

Another officer reconfirmed Defendant's consent to search the truck and directed Defendant to get out of the vehicle.  Detective Justin Shook found a black toiletry bag behind the seats, which contained an object roughly the size of a 500 ml soft drink bottle that was tightly wrapped in black duct tape.  Detective Shook then stopped the search and directed officers to handcuff Defendant and his passenger.  At this time, Officer Ragusa still had Defendant's license, and around twenty-one seconds after Defendant was handcuffed, Officer Ragusa went to his car to access traffic citation and driver's licensing databases, spending around one minute and eight seconds doing these tasks.  Officer Ragusa confirmed the status of Defendant's license and told Defendant how to obtain a new physical license.

For the next thirty-six seconds, nothing happened. Then, an officer began a dog sniff of the truck, which lasted two minutes and forty-one seconds. The dog alerted to the presence of narcotics. Following the dog sniff, the officers resumed their search, including field testing the contents of the duct-taped item and obtaining a positive result for methamphetamine and fentanyl. An officer questioned Defendant, eliciting several incriminatory statements before arresting him. After waiving his *Miranda* rights, Defendant agreed to be interviewed at the police station and admitted to knowing that there was approximately a pound of narcotics in his truck. He also made statements indicating that he had the drugs for a couple of days, and that he had previously served ten years in Florida State Prison for narcotics offenses. Defendant admitted to being a drug dealer and selling methamphetamine for about $2,600 per pound.

In his motion, Defendant challenges the legality of the traffic stop, arguing that the officers unlawfully prolonged the stop when Officer Ragusa asked him the questions about whether he had weapons or narcotics in the truck. Defendant specifically contends that because the Fourth Amendment does not provide a *de minimis* exception allowing police to extend the duration of a traffic stop beyond the reason for the stop, the seizure was unreasonable. Defendant requests that the Court suppress all evidence derived from the search of the vehicle.

### Legal Standard

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or

vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "[A] decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred . . . and an officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 690, 699 (1996)). "[T]he tolerable duration of police inquires in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop […] and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations omitted). When the tasks tied to the traffic infraction are or should have been completed, authority for the seizure ends. *Id.*

## Analysis

The parties do not dispute whether the initial traffic stop, based on illegal window tinting, was permissible – it undoubtedly was. Instead, the disagreement centers on whether the officer's questions concerning weapons and narcotics unreasonably prolonged the stop.[2] Defendant relies heavily on *United States v. Campbell*, 26 F.4th 860 (11th Cir. 2022), to argue that *any* questioning that is not directly related to the purpose of a traffic stop renders the seizure unreasonable.

---

[2] The Court notes that Defendant does not challenge whether the dog sniff prolonged the stop, and he makes no challenges to the *Miranda* waiver or the voluntariness of his statements.

Police officers may not detain a suspect indefinitely when conducting a traffic stop – the stop must be "limited in scope and duration." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see Rodriguez*, 575 U.S. at 354-56.  In addition to determining whether to issue a citation, an officer may conduct ordinary inquiries during a traffic stop, such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.*; *United States v. Vargas*, 848 F.3d 971, 974 (11th Cir. 2017) (quoting *Rodriguez*).  At the time Officer Ragusa asked the questions about weapons and requested consent to search, Officer Ragusa had requested Defendant's driver's license (an ordinary inquiry related to the traffic stop) but had not yet completed a records check or written a citation.  Because Officer Ragusa had not yet completed his duties related to the traffic stop, there was no unlawful prolongation.  *See, e.g.*, *United States v. Keith*, No. CR 120-072, 2021 WL 6340985, at *5 (S.D. Ga. Dec. 2, 2021), *report and recommendation adopted*, 2022 WL 95287 (S.D. Ga. Jan 10, 2022) ("[O]fficers are permitted to ask for consent to search so long as the question is posed while active progress is being made to complete the traffic stop."); *United States v. Coleman*, No. 7:23-cr-00233-LSC-SGC, 2022 WL 17548610, at *5 (N.D. Ala. Aug. 4, 2022), *report and recommendation adopted*, 2022 WL 16708447 (N.D. Ala. Nov. 4, 2022) (explaining that if officer had requested consent to search while completing tasks related to the mission of the stop in a reasonably diligent manner, unrelated questioning would

not have added time to the duration of the stop and would have therefore been

permissible).

As he performed his routine traffic-related tasks, Officer Ragusa spent

approximately *eight seconds* asking Defendant questions primarily related to the

presence of weapons.  Officers are permitted to address legitimate safety concerns

by asking about the presence of weapons.  *See, e.g.*, *Rodriguez*, 757 U.S. at 354;

*United States v. Braddy*, 11 F.4th 1298, 1310 (11th Cir. 2021); *United States v.*

*Harris*, No. 2:22-cr-67-SPC-KCD, 2023 WL 3043647, at *4 (M.D. Fla. Apr. 21, 2023).

As such, Officer Ragusa's questions did not unlawfully prolong the stop because

they addressed a very legitimate officer safety concern.

Officer Ragusa was not asking wholly unrelated questions aimed at

investigating other crimes without reasonable suspicion, like the questions posed by

the officer in *Campbell*.  *See Campbell*, 26 F.4th at 885.[3]  The questions here

primarily involved the presence of weapons, although Officer Ragusa very briefly

mentioned "illegal narcotics."  The officer's mere reference to "illegal narcotics" is

insufficient to change the outcome here.  First, the question about illegal narcotics

is also related to officer safety since exposure to certain narcotics may present a risk

to officers, including potential adverse health effects.  *See Fentanyl: Emergency*

*Responders at Risk*, Centers for Disease Control and Prevention, February 11, 2020,

---

[3] In *Campbell*, the officer asked, "[Do you have] any counterfeit merchandise that you are taking to your relatives over there in Augusta? And what I mean by that is—any purses? Shoes? Shirts? Any counterfeit or bootleg CDs or DVDs or anything like that? Any illegal alcohol? Any marijuana? Any cocaine? Methamphetamine? Any heroin? Any ecstasy? Nothing like that? You don't have any dead bodies in your car?" *Campbell*, 26 F.4th at 885.

https://www.cdc.gov/niosh/topics/fentanyl/risk.html; Sophia K. Chiu, MD, MPH,

*Law Enforcement Officers' Health Effects from Exposure to Opioids: Two Case*

*Investigations*, Centers for Disease Control and Prevention, June 27, 2019,

https://blogs.cdc.gov/niosh-science-blog/2019/06/27/leo-opioids/.  Second, even if the

question related to illegal narcotics was arguably unrelated to officer safety, the

focus of Officer Ragusa's inquiry was clearly on weapons, and the mere mention of

narcotics does not render the entirety of the seizure unlawful.

For these reasons, the motion to suppress is denied.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 17th day of

July, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**